IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. |
| v. | : : : | JURY TRIAL DEMAND |
| PENNEY OPCO LLC, | : : | |
| Defendant. | : : | |

# **COMPLAINT**

This is an action under Title I and Title V of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Angela Grier ("Grier"), who was adversely affected by such practices. The Equal Employment Opportunity Commission ("EEOC") alleges that Penney OpCo LLC ("Penney") engaged in intentional discrimination against Grier when it failed to accommodate her disability and discharged her because of her actual disability and/or in retaliation for engaging in protected activity in violation of the ADA.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3), of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3. The EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Penney, a Georgia limited liability company, has continuously been doing business in the state of Georgia and the city of Forest Park and has continuously employed at least 15 employees.

5. At all relevant times, Penney has continuously been an employer

engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

6.   At all relevant times, Penney has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7.   More than thirty days prior to the institution of this lawsuit, Grier filed a Charge of Discrimination with the EEOC alleging violations of the ADA by Penney.

8.   On April 9, 2025, the EEOC issued to Penney a Letter of Determination on Grier's Charge of Discrimination finding reasonable cause to believe that the ADA had been violated and inviting Penney to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9.   The EEOC engaged in communications with Penney to provide it with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10.   On June 18, 2025, the EEOC issued to Penney a Notice of Failure of Conciliation advising Penney that the EEOC was unable to secure from Penney a

conciliation agreement acceptable to the EEOC.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since at least April 2023, Penney has engaged in unlawful employment practices in violation of Section 102 of Title I and Section 503 of Title V of the ADA, 42 U.S.C. §§ 12112 and 12203.

13. Grier is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

14. In or about April 2023, Grier was diagnosed with breast cancer, which is a physical impairment that substantially limits her in several major life activities, including but not limited to the major life activities of normal cell growth, caring for oneself, eating, standing, and performing manual tasks.

15. As part of the treatment for breast cancer, Grier receives chemotherapy, which she began in or about May 2023 and which she still receives once per month. Chemotherapy treatments make Grier feel weak, exhausted, and unable to eat.

16. Penney does business as JC Penney, which is a department store retailer with stores across the United States and Puerto Rico.

17. In support of its business, Penney operates nine logistics centers or

warehouses nationwide, including the location in Georgia at which Grier was employed.

18. On or about September 29, 2022, Grier began working for Penney as an hourly Warehouse Associate.

19. As a Warehouse Associate, Grier's job duties were to pull products from shelves to be packed and shipped.

20. Grier was qualified to perform the job of Warehouse Associate and could perform the essential functions of the job with or without a reasonable accommodation.

21. Penney's attendance policy (the "Attendance Policy") uses a points-based system to track unexcused absences, late arrivals, early departures, and failures to report.

22. Points are assigned for each occurrence and no more than 5.5 points are permitted per employee over a rolling 26-week period.

23. Any Penny employee who accumulates 6 points or more during the 26-week rolling period is at risk of being discharged.

24. However, any absence, late arrival, or early absence will not result in points if the employee is protected by law such as if an employee is granted an accommodation under the ADA.

25. Penney's policy related to reasonable accommodations under the

ADA (the "Accommodation Policy") states: "Leave is often provided as a reasonable accommodation when the associate needs time for medical recovery or treatment."

26. Under Penny's Accommodation Policy, one example of a request for a reasonable accommodation is where "[a]n associate requests a schedule change based on a need for medical treatment."

27. To make a request for an accommodation, Penney directs its employe.es to contact its third-party leave administrator.

28. Therefore, the third-party administrator was Penney's agent for all purposes related to the EEOC's claims.

29. Pursuant to the Accommodation Policy, on or about May 1, 2023, Grier submitted an accommodation request under the ADA for intermittent leave related to her cancer treatment to Penney's third-party leave administrator.

30. Therefore, Penney had knowledge of Grier's request for a reasonable accommodation under the ADA.

31. The third-party leave administrator directed Grier to have her doctor complete and return a Medical Information Request for Reasonable Accommodation form (the "ADA Form").

32. Grier's doctor completed the ADA Form and returned it to the third-party leave administrator on or about May 31, 2023.

6

33. On the ADA Form, Grier's doctor stated that the duration of Grier's condition was from May 1, 2023, through November 30, 2023.

34. Grier's doctor also noted that the impairment or major life activity was "carcinoma of breast.".

35. Therefore, Penney had actual knowledge of Grier's disability.

36. The ADA Form requested an accommodation of "intermittent time off". For appointments, Grier's doctor requested two days for three chemotherapy appointments per month and three episodes related to her condition per month lasting up to two days per episode.

37. Grier's request for leave for medical treatment and recovery from same was a reasonable accommodation because it is a type of accommodation explicitly described in Penny's Accommodation Policy.

38. The next step in the accommodation process under Penny's Accommodation Policy was supposed to be for the third-party leave administrator to present Grier's accommodation request to Grier's manager for approval.

39. Instead, the third-party leave administrator inexplicably closed Grier's ADA accommodation claim, which meant that the accommodation request was denied.

40. Grier's supervisor was not contacted by Penney's third-party leave administrator to approve her accommodation request.

41. Grier's supervisor, however, stated that she did and could have covered Grier's absence by using other employees, which was her common practice when any employee was absent.

42. As such, there would have been no financial cost to Penney to cover Grier's shifts or any other employee's shifts. Therefore, it was not an undue hardship for Penney to provide the accommodation of intermittent leave to Grier.

43. Grier attended her chemotherapy and other doctor's appointments related to treatment of her cancer during May and June 2023, which caused her to be absent from work.

44. In addition to doctor's appointments, Grier also missed several days of work due to her recovery from the chemotherapy treatments.

45. Because the third-party leave administrator closed Grier's accommodation claim, her accommodation request was not granted, so she began to accrue points under Penny's Attendance Policy when she missed work to attend chemotherapy appointments and to recover from same.

46. If Grier's accommodation request had been granted, she would not have accrued points under Penny's Attendance Policy for the days that she missed related to her cancer treatment.

47. On or about June 26, 2023, Grier's supervisor approached Grier to discuss her attendance because she was accruing points under Penney's Attendance

Policy.

48. Grier told her supervisor that she had cancer and the only reason she was missing work was to receive treatment for her cancer and to recover from that treatment. However, the supervisor did not discuss any accommodations with Grier.

49. Grier missed another day of work on June 30, 2023, which was the day after one of her chemotherapy appointments.

50. Penney discharged Grier on July 3, 2023, for violating its Attendance Policy.

51. Penney based its discharge of Grier on its claim that she accrued 9.5 points under the Attendance Policy.

52. At least nine of those points, however, were for absences related to Grier's cancer treatment and recovery from same, so they should not have counted under the terms of the Attendance Policy.

53. If Grier had been provided with the requested accommodation of intermittent leave, she would not have been discharged.

### *Failure to Accommodate*

54. Grier requested a reasonable accommodation that would have allowed her to perform the essential functions of the Warehouse Associate position.

55. Grier requested intermittent medical leave as a disability-based

accommodation.

56. Grier's requested accommodation was reasonable.

57. Grier's requested accommodation would allow her to perform the essential functions of the Warehouse Associate position.

58. Penny unreasonably denied Grier's requested accommodation.

59. Penny failed to grant any alternative accommodation to Grier that would have allowed her to perform the essential functions of the Warehouse Associate position.

### *Disability Discrimination*

60. Penny subjected Grier to an adverse employment action – discharge – because of her breast cancer, and/or because she required accommodation for her disability.

61. When discharging Grier, Penny was aware of Grier's disability and request for an accommodation due to breast cancer.

62. Penny discharged Grier because of her disability.

### *Retaliation*

63. In or about May 2023, Grier requested the reasonable accommodation of intermittent medical leave under the ADA.

64. Grier's request for a reasonable accommodation under the ADA is statutorily protected activity.

65. Grier applied for intermittent medical leave to receive treatments for breast cancer and to recover from same.

66. Grier also applied for medical leave to avoid accruing attendance points under Penny's Attendance Policy due to her absences being related to her disability. Pursuant to Penny's Accommodation Policy, Grier's absences due to her disability should have been excluded.

67. Penny was aware of Grier's disability and her request for a reasonable accommodation under the ADA.

68. However, Grier's reasonable accommodation request was denied by Penny.

69. Penny discharged Grier on or about July 3, 2023.

70. The effect of the practices complained of above have been to deprive Grier of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability and/or because she engaged in protected activity.

71. The unlawful employment practices complained of above were intentional.

72. The unlawful employment practices complained of above were done with malice or with reckless indifference to Grier's federally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Penney, its officers, members, managers, successors, assigns and all other persons in active concert or participation with it, from discharging employees because of their disabilities or because they requested or needed a reasonable accommodation under the ADA and from denying reasonable accommodations to employees with disabilities, and from engaging in any other employment practices that discriminate on the basis of disability status.

B. Order Penney to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Penney to make Grier whole by providing appropriate back pay with pre-judgment interest, in an amount to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Penney to make Grier whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in an amount to be determined at trial.

E.  Order Penney to make Grier whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain and suffering, loss of enjoyment of life, inconvenience, anxiety, stress, and humiliation, in amounts to be determined at trial.

F.  Order Penney to pay punitive damages to Grier for Penny's malicious and/or reckless conduct described above, in an amount to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the EEOC its costs in this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

*/s/Steven A. Wagner*
Steven A. Wagner
Trial Attorney
Georgia Bar No. 000529
steven.wagner@eeoc.gov

13

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
(470) 531-4838 (direct)
(404) 562-6905 (facsimile)